NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1671-14T4

BMW FINANCIAL SERVICES NA, LLC,

 Plaintiff-Respondent,

v.

DONALD PLOETNER and MADELINE
PLOETNER,

 Defendants-Appellants,

and

PEOPLE OF THE STATE OF NEW
JERSEY, NEW JERSEY DEPARTMENT
OF TAXATION AND FINANCE,

 Defendants,

and

DONALD PLOETNER and MADELINE
PLOETNER,

 Third-Party
 Plaintiffs-Appellants,

v.

BMW OF NORTH AMERICA, LLC,

 Third-Party
 Defendant-Respondent.
___________________________________
 Argued on September 20, 2016 – Decided July 25, 2017

 Before Judges Fisher, Ostrer and Leone.

 On appeal from the Superior Court of New
 Jersey, Chancery Division, Morris County,
 Docket No. F-32595-09.

 Robyne D. LaGrotta argued the cause or
 appellants.

 Joann Sternheimer argued the cause for
 respondent BMW Financial Services NA, LLC
 (Deily & Glastetter, LLP, attorneys; Ms.
 Sternheimer, on the brief).

 John R. Skelton (Seyfarth Shaw LLP) of the
 Massachusetts bar, admitted pro hac vice,
 argued the cause for respondent BMW of North
 America, LLC (Seyfarth Shaw LLP, attorneys;
 Ardrelle Bahar and Mr. Skelton, on the brief).

PER CURIAM

 Defendants Donald and Madeline Ploetner1 appeal from a final

judgment of foreclosure and interlocutory orders that: dismissed

their counterclaim against their lender, plaintiff, BMW Financial

Services NA, LLC (BMW Financial); dismissed their third-party

complaint against BMW of North America, LLC (BMW NA), which

franchised a BMW dealership to a corporation the Ploetners

controlled; and granted summary judgment. The trial court held

that the Ploetners' affirmative claims were derivative of claims

that belonged to their two bankrupt business entities — Towne,

1
 We were informed at oral argument that Donald Ploetner is
deceased.
 2 A-1671-14T4
Inc. (Towne), which operated a BMW automobile dealership in Oyster

Bay, New York, and DMD Towne, LLC (DMD), which owned the

dealership's realty. Towne and DMD released their claims against

BMW Financial and BMW NA (the BMW entities) pursuant to a 2010

Bankruptcy Court order and release agreements between the

bankruptcy trustee and the BMW entities (Trustee Releases). The

Ploetners and their businesses also released claims against BMW

Financial under an earlier Forbearance Agreement. Consequently,

the court held that the Ploetners' affirmative claims were barred.

As they raised no other personal defenses or claims in response

to the foreclosure action, the court granted BMW Financial summary

judgment and, ultimately, a final judgment of foreclosure.

 On appeal, the Ploetners challenge the validity of the

Forbearance Agreement and the Trustee Releases. They argue the

former lacks consideration and is illusory and the latter violates

federal bankruptcy law. We reject those arguments and affirm.

 I.

 The Ploetners purchased and operated a BMW dealership in

Oyster Bay. In order to do so, the Ploetners and their businesses

(the borrowers) entered into various credit and guarantee

agreements with BMW Financial. Among the loans obtained, the

Ploetners personally borrowed $848,000 and $948,000 from BMW

 3 A-1671-14T4
Financial. The loans were secured by mortgages on two reportedly

undeveloped parcels in Harding Township (New Jersey Mortgages).

 Less than three years after they acquired the dealership, the

borrowers defaulted on the inventory finance agreement that

enabled Towne to obtain vehicles on credit, but obliged it to

repay BMW shortly after a vehicle's sale. Rather than resort to

its post-default remedies, BMW Financial, pursuant to the

Forbearance Agreement, offered to refrain from exercising its

rights and remedies and to permit the borrowers to delay certain

payments. At that time, the borrowers owed BMW Financial almost

$10 million under the various loans. The Forbearance Agreement

was "intended to provide Borrower a series of weekly periods to

develop and execute a business turnaround plan designed to address

capitalization and cash flow issues" and take other steps. The

Forbearance Agreement terminated upon the earlier of: a default

of the Forbearance Agreement; at the end of the forbearance period,

November 3, 2008; or BMW Financial's "determin[ation] in its

discretion that Borrower [was] not making sufficient progress to

satisfactorily address the capitalization and cash flow issues."

The Forbearance Agreement was to be construed according to Ohio

law.

 4 A-1671-14T4
 As consideration for BMW Financial's forbearance, the

Ploetners and their business entities broadly released claims they

had or might have against BMW Financial:

 Each Obligor acknowledges and agrees that: (a)
 such Obligor has no claim or cause of action
 against Lender (or any of Lender's directors,
 officers, employees, or agents); (b) such
 Obligor has no offset right, counterclaim, or
 defense of any kind against any of the
 Obligations; and (c) Lender has heretofore
 properly performed and satisfied in a timely
 manner all of Lender's obligations to each
 Obligor. Lender wishes, and each Obligor
 agrees, to eliminate any possibility that any
 past conditions, acts, omissions, events,
 circumstances, or matters would impair or
 otherwise adversely affect any of Lender's
 rights, interests, collateral security, or
 remedies. In consideration of, among other
 things, the forbearance provided for herein,
 and any other financial accommodations which
 Lender elects to extend to Obligors, each
 Obligor forever waives, releases and
 discharges any and all claims (including,
 without limitation, cross-claims,
 counterclaims, rights of setoff and
 recoupment), causes of action, demands, suits,
 costs, expenses and damages that it now has
 or hereafter may have, of whatsoever nature
 and kind, whether known or unknown, whether
 now existing or hereafter arising, whether
 arising at law or in equity that arise under
 or relate to any of the Loan Documents or this
 Agreement (collectively, "Claims"), against
 Lender, or any of its subsidiaries and
 affiliates, and its and their respective
 successors, assigns, officers, directors,
 employees, agents, attorneys and other
 representatives, based in whole or in part on
 facts, whether or not known, existing on or
 prior to the date of this Agreement. As
 further consideration for the above release,
 Borrowers hereby agree, represent, and warrant
 5 A-1671-14T4
 that the matters released herein are not
 limited to matters which are known or
 disclosed, and Borrowers hereby waive any and
 all rights and benefits which it now has, or
 in the future may have. The provisions of
 this section shall survive the termination of
 this Agreement, the Loan Documents and payment
 in full of the Obligations.

 The Forbearance Agreement recited that it was "dated as of

October ___, 2008[,]" but the precise date was left blank. The

Ploetners admit they signed the agreement. There is no competent

evidence that BMW Financial's representatives did so as well.2

Yet, the Ploetners do not dispute there was a period of

forbearance. It was short-lived, however. According to Ms.

Ploetner, the forbearance expired after ten days. BMW Financial

alleged it offered to extend the Forbearance Agreement for another

forbearance period, but the Ploetners' refused.

 In December 2008, BMW Financial sued Towne, DMD, and the

Ploetners in New York state court to enforce its rights under loan

agreements other than the New Jersey mortgage notes. Thereafter,

Towne, with DMD following closely behind, sought protection under

2
 At a 2012 deposition, Ms. Ploetner acknowledged that she and her
husband had signed the agreement, but her counsel noted that the
copy with which she was confronted did not contain BMW Financial
signatures. At oral argument before us, BMW Financial's counsel
presented to the court a copy of a completely signed agreement,
which counsel had provided to the Ploetners' counsel only the day
before. The document was unaccompanied by a certification of a
person with personal knowledge to authenticate it or to specify
when the BMW Financial representatives actually signed it.
 6 A-1671-14T4
Chapter 11 of the Bankruptcy Code. Towne filed an adversary

proceeding against the BMW entities, alleging various wrongs in

connection with the purchase and operation of the dealership, but

voluntarily dismissed it within a month.3 The Bankruptcy Court

vacated the automatic stay to permit BMW Financial to foreclose

on the dealership and to replevy collateral. The Ploetners were

unable to secure BMW Financial's consent to sell the dealership

for an amount less than its outstanding debt.

 The Bankruptcy Court eventually converted the Chapter 11

proceeding into a Chapter 7 proceeding, and a bankruptcy trustee

assumed decision-making authority. In January 2010, the

Bankruptcy Court authorized the trustee to sell the dealership's

assets and to release BMW Financial and BMW NA of any claims Towne

or DMD had against them. The trustee then executed the Trustee

Releases, covering claims against the two BMW entities, "on behalf

of Towne and DMD and their[] directors, officers, employees,

managers, agents, attorneys, or other representatives, and to the

extent their claims are derivative of the claims of Towne and/or

DMD, Towne's and DMD's members, stockholders, or principals

. . . ." The release of BMW NA covered all current and future

claims, including those:

3
 Few of the Bankruptcy Court filings are included in the record
before us. We rely on the parties' representations about the
nature of the filings.
 7 A-1671-14T4
 arising out of or relating to (i) the Dealer
 Agreements or the operation of Towne as an
 authorized BMW NA dealership; (ii) any claims
 based on the factual allegations made by Towne
 in the Adversary Proceeding including, as
 alleged therein, any claims based on the
 acquisition of the Towne Dealership Assets or
 the Dealership Property; BMW NA's review and
 approval of the acquisition of the Town
 dealership; the allocation and sale of vehicle
 inventory by BMW NA to Towne; any effort by
 Towne to sell its dealership; or BMW NA's AVP
 or CPO programs; and (iii) any claims asserted
 or which could have been asserted in the State
 Court Action.

The release of BMW Financial covered all current and future claims,

including those:

 arising out of or relating to (i) Loan
 Documents and any related documents; (ii) any
 claims based on the factual allegations made
 by Towne in the Adversary Proceeding
 including, as alleged therein, any claims
 based on the acquisition of the Towne
 Dealership Assets or the Dealership Property;
 any effort by Towne and/or DMD to sell their
 assets; BMW [Financial]'s consent to the sale;
 and (iii) any claims asserted or which could
 have been asserted in the Replevin Action
 and/or the Foreclosure Action.

Both agreements stated that the releases were "intended to be

general and absolute and relieve the . . . releasees from any

possible claim by or liability that might conceivably exist arising

from or relating to matters prior to the date of this release."

(All caps removed). The Ploetners did not challenge the Trustee

Releases before the Bankruptcy Court.

 8 A-1671-14T4
 While the bankruptcy case was proceeding, BMW Financial filed

this action to foreclose on the New Jersey Mortgages. In an

amended answer in March 2010, the Ploetners asserted a five-count

counterclaim against BMW Financial and a third-party complaint

against BMW NA. In the first two counts, the Ploetners alleged

that the BMW entities, in violation of the New York Franchised

Motor Vehicle Dealer Act, constructively terminated their

franchise by suspending its agreement to purchase new motor vehicle

inventory and imposing onerous requirements upon the dealership

(count one), and interfered with their ability to sell the

dealership upon favorable terms (count two). In the remaining

counts, the Ploetners also alleged the BMW entities: violated the

New Jersey Franchise Practices Act (count three); tortiously

interfered with Towne's business relations and the Ploetners'

reasonable economic expectations (count four); and breached the

duty of good faith and fair dealing owed to Towne and the Ploetners

(count five).

 The case then took a detour to Bankruptcy Court when BMW NA

removed the third-party complaint. But that court later remanded

the case back. In support of remand, the Ploetners had argued

they were asserting claims personal to them and independent of

Towne. Their counsel wrote, "The Ploetners are not pursuing claims

 9 A-1671-14T4
which belonged to, were released by, or are derivative to Towne,

Inc."

 A year later, BMW Financial and BMW NA filed motions for

"judgment on the pleadings" to dismiss the counterclaim and third-

party complaint. BMW Financial expressly requested, in the

alternative, entry of summary judgment. The BMW entities provided

the court with the Forbearance Agreement and the Trustee Releases.

 In opposition, the Ploetners contended they had not failed

to state a claim under Rule 4:6-2; the motion to dismiss relied

on extrinsic materials; and summary judgment was premature, as no

discovery had occurred. With respect to the Trustee Releases, the

Ploetners again argued they were seeking redress for harm done to

them personally. Citing Strasenburgh v. Straubmuller, 146 N.J.

527, 550-51 (1996), they argued they suffered "special injury,"

not suffered by shareholders generally, which fell outside claims

of the business entities the trustee released. At oral argument,

counsel reiterated, "I wouldn't be here if I believed that we

could pursue the claims of Town[e], Inc. We're not, [and] we

don't intend to[.]" In reference to his prematurity argument, he

argued, "[W]e should be able to examine the validity of the

[Forbearance] [A]greement." However, counsel did not actually

challenge the Agreement's validity.

 10 A-1671-14T4
 The court granted "judgment on the pleadings" dismissing the

counterclaims and third-party complaint. In an oral decision

entered September 9, 2011, the judge stated the claims belonged

to the Ploetners' business entities, which the trustee released.

The court rejected the Ploetners' prematurity argument, concluding

no discovery would affect the Trustee Releases' validity and their

impact on the business entities' claims. The Ploetners' counsel

asked for leave to amend — presumably to assert claims other than

those found to be derivative of the businesses. The court allowed

the Ploetners to move to amend, but they never did.

 Over a year-and-a-half later, BMW Financial filed a motion

for summary judgment entitling it to foreclose on the Harding

Township properties. By then pro se, the Ploetners opposed the

motion and filed a cross-motion seeking various forms of relief.

Most pertinent to this appeal, they asked the court to vacate its

previous order. They certified they were duped into signing the

Forbearance Agreement by their attorney, and that they would never

have knowingly exchanged the release in return "for being permitted

to remain in business approximately an additional ten (10) days[.]"

They contended the business entities' counsel disserved them,

ultimately resulting in the loss of their dealership and

investment.

 11 A-1671-14T4
 On September 30, 2013, the court granted BMW Financial's

motion. In a written statement of reasons, the court noted that

the only defense to foreclosure consisted of the Ploetners'

allegation that BMW NA had engaged in various wrongs that forced

the dealership into bankruptcy. The court concluded that both the

Forbearance Agreement and Trustee Releases barred those claims,

and the foreclosure matter was therefore deemed uncontested.4

 The Ploetners subsequently sought clarification of the

court's order, as well as a stay, which the court denied. In the

course of oral argument, Ms. Ploetner asserted for the first time

that the Forbearance Agreement was invalid because BMW Financial

did not sign it. The court rejected the argument on the grounds

that BMW Financial had performed.

 Thereafter, BMW Financial moved for final judgment of

foreclosure, which the court granted on October 28, 2014. This

appeal followed. The Ploetners, now represented by counsel,

present the following points for our consideration:

 POINT I

 THE FINAL JUDGMENT FOR FORECLOSURE DATED OCTOBER 28, 2014
 SHOULD BE VACATED AS IT WAS PREMISED ON AN ORDER GRANTING
 SUMMARY JUDGMENT ON SEPTEMBER 30, 2013.

4
 In another appearance, in which the Ploetners sought to hasten
the filing of the foreclosure judgment to pave the way for an
appeal, Ms. Ploetner contended orally for the first time that BMW
Financial failed to perform as promised under the Forbearance
Agreement. That argument has not been renewed on appeal.
 12 A-1671-14T4
 A. THE ORDER FOR SUMMARY JUDGMENT DATED SEPTEMBER 30,
 2013 SHOULD BE VACATED AS IT WAS PREMISED ON AN INVALID
 FORBEARANCE AGREEMENT.

 B. THE ORDER FOR SUMMARY JUDGMENT DATED SEPTEMBER 30,
 2013 SHOULD BE VACATED AS IT WAS PREMISED ON AN INVALID
 RELEASE SIGNED BY THE BANKRUPTCY TRUSTEE.

 POINT II

 THE ORDER DISMISSING THE COUNTERCLAIM AND THIRD PARTY
 COMPLAINT DATED SEPTEMBER 9, 2011 MUST BE VACATED.

 II.

 The Ploetners challenge the validity of the Forbearance

Agreement and the Trustee Releases, contending they are the

linchpins of the order granting summary judgment on September 30,

2013, which in turn cleared the way for entry of a final judgment

of foreclosure. They also challenge the September 9, 2011 order

dismissing their counterclaim and third-party complaint. Their

arguments lack merit.

 At the outset, we reject the BMW entities' argument that we

should decline to even consider the Ploetners' challenge to the

September 30, 2013 and September 9, 2011 orders because they did

not identify them in their notice of appeal. The BMW entities do

not contend they are prejudiced by the Ploetners' omission. We

are mindful that the Ploetners' pro se notice of appeal and case

information statement identified the October 28, 2014 judgment as

the only judgment, decision or order being appealed. See Rule

2:5-1(f)(3)(A) (stating that a notice of appeal "shall designate
 13 A-1671-14T4
the judgment, decision, action or rule, or part thereof appealed

from"); Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 461-

62 (App. Div.) (stating that appellate review pertains only to

judgments or orders specified in the notice of appeal), certif.

denied, 174 N.J. 544 (2002). But the case information statement

included an extensive statement of facts and procedural history

that identified the September 9, 2011 and September 30, 2013

orders. Moreover, in their description of proposed issues to be

raised on appeal, the Ploetners challenged the validity of the

Forbearance Agreement and contended the Trustee Releases were a

product of improper actions. We therefore choose to address the

merits of the appeal.5

 We review the trial court's 2011 and 2013 orders de novo,

applying the same standard as the trial court. Henry v. N.J.

Dep't of Human Servs., 204 N.J. 320, 330 (2010) (summary judgment);

Rezem Family Assocs. v. Borough of Millstone, 423 N.J. Super. 103,

113-14 (App. Div.) (motion to dismiss), certif. denied, 208 N.J.

366 (2011). With respect to a summary judgment motion, "the

5
 We also recognize that the Ploetners did not timely challenge
the validity or enforceability of the Forbearance Agreement and
Trustee Releases before the trial court. They opted instead to
contend that the Trustee Releases did not bar claims of special
damages or other claims personal to the Ploetners, as distinct
from their entities. Although we are not required to consider the
validity and enforceability arguments as they were not raised
below, see Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234
(1973), we choose to do so.
 14 A-1671-14T4
appellate court should first decide whether there was a genuine

issue of material fact, and if none exists, then decide whether

the trial court's ruling on the law was correct." Henry, supra,

204 N.J. at 330. Where a "complaint states no basis for relief

and . . . discovery would not provide one, dismissal of the

complaint [under Rule 4:6-2] is appropriate." Cnty. of Warren v.

State, 409 N.J. Super. 495, 503 (App. Div. 2009), certif. denied,

201 N.J. 153, cert. denied, 561 U.S. 1026, 130 S. Ct. 3508, 177

L. Ed. 2d 1092 (2010).

 The Ploetners argue the Forbearance Agreement is invalid

because it lacked consideration. Ohio courts have adopted the

principle that "[f]orbearance from exercising a right or doing an

act which one has a right to do is legal consideration." HomEq

Servicing Corp. v. Schwamberger, 4th Dist. Scioto No. 07CA3146,

2008-Ohio-2478, ¶ 19 (quoting 3 Williston on Contracts § 7:43, at

677 (Lord ed., 4th ed. 1992) in enforcing forbearance agreement

between mortgagee and defaulting mortgagor), aff'd, 908 N.E.2d 423

(Ohio 2009). However, the Ploetners contend they were not bound

because no one signed the agreement on behalf of BMW Financial.

They further argue BMW Financial's promise to forbear was illusory

because it retained the discretion to terminate the forbearance

term.

 15 A-1671-14T4
 Both arguments are unavailing. Unless parties have specified

that an agreement must be signed, a signature of a contracting

party is not essential to create an enforceable contract, provided

assent is demonstrated through other means. See Richard A.

Berjian, D.O. v. Ohio Bell Tel. Co., 375 N.E.2d 410, 413-14 (Ohio

1978) (enforcing a contract though one party did not sign it in

the space provided, stating, "[s]ignature spaces in the form

contract do not in and of themselves require that the signatures

of the parties are a condition precedent to the agreement's

enforceability"); see also Bruzzese v. Chesapeake Exploration,

LLC, 998 F. Supp. 2d 663, 674-75 (S.D. Ohio 2014).

 Assent can be demonstrated by performance. Hocking Valley

Cmty. Hosp. v. Cmty. Health Plan of Ohio, 4th Dist. Hocking No.

02CA28, 2003-Ohio-4243, ¶ 16 ("Performance can substitute for

execution of a written contract against the party who did not

execute the contract . . . as well as against the party who

executed the contract[.]"). In this case, there is no dispute

that BMW Financial did perform, at least for ten days, forbearing

from exercising the various remedies at its disposal based on the

Ploetners' default.

 Nor was BMW Financial's promise to forbear illusory because

it retained the right to terminate the Forbearance Agreement if

it "determine[d] in its discretion that Borrower [was] not making

 16 A-1671-14T4
sufficient progress to satisfactorily address the capitalization

and cash flow issues." BMW Financial did not retain an "unlimited

right to determine the nature or extent of [its] performance,"

which would "destroy[] [its] promise and thus make[] it merely

illusory." Bruzzese, supra, 998 F. Supp. 2d at 672 (quoting

Domestic Linen Supply & Laundry Co. v. Kenwood Dealer Grp., Inc.,

672 N.E.2d 184, 186 (Ohio Ct. App.), cause dismissed, 663 N.E.2d

327 (Ohio 1996)); see also Atkinson v. Akron Bd. of Educ., 9th

Dist. Summit No. 22805, 2006-Ohio-1032, ¶ 16. Although it retained

discretion, BMW Financial's termination right was tied to the

borrowers' progress, which was subject to detailed standards in

the agreement. See Bruzzese, supra, 998 F. Supp. 2d at 672

(rejecting claim contract was illusory because it "provided

standards by which Chesapeake was to determine whether land was

acceptable for leasing"). Furthermore, BMW Financial was bound

to exercise its termination authority in good faith. See ibid.

(noting that Chesapeake could not utilize its discretionary

determination whether title was marketable in bad faith).

 The Ploetners' challenge to the Trustee Releases fares no

better. The proper forum for the Ploetners' challenge was in the

Bankruptcy Court, and if unsuccessful, the United States District

Court and the United States Court of Appeals. "[T]he proper medium

for a challenge to the original bankruptcy court's order is through

 17 A-1671-14T4
a direct challenge of that order. The collateral attacks brought

later are barred by res judicata." Hendrick v. Avent, 891 F.2d

583, 587 (5th Cir.) (rejecting collateral attack of bankruptcy

court order for the sale of debtor's stock), cert. denied, 498

U.S. 819, 111 S. Ct. 64, 112 L. Ed. 2d 39 (1990). The Bankruptcy

Court order authorizing the sale of the dealership and the release

of the BMW entities, is res judicata, as the Towne entities

participated in the bankruptcy. See Regions Bank v. J.R. Oil Co.,

387 F.3d 721, 731 (8th Cir. 2004).6

 Furthermore, the legal basis for the Ploetners' contention

that the trustee lacked the authority to enter the releases is

unavailing. The trustee did not release claims of the Ploetners.

Thus, their reliance on In re Central Ill. Energy, LLC, 406 B.R.

371 (Bankr. C.D. Ill. 2008) is misplaced. The Ploetners also can

6
 We note that the Ploetners have taken a position that they
assiduously avoided before the Bankruptcy Court. After BMW NA
removed the third-party complaint to Bankruptcy Court, the
Ploetners sought a remand. Their attorney contended not that the
Trustee Releases were invalid — an issue for the Bankruptcy Court
— but that the Ploetners alleged personal claims outside the scope
of the Trustee Releases — an issue for the state court. A remand
followed. However, we decline to find they are judicially estopped
from arguing the Trustee Releases were unenforceable. To apply
the doctrine the proponent must establish that "a party . . .
[has] advance[d] a position in earlier litigation that is accepted
and permit[ted] the party to prevail in that litigation . . . ."
Bhagat v. Bhagat, 217 N.J. 22, 36 (2014). Although the Ploetners
prevailed in their effort to secure a remand, the record simply
does not reflect whether the court accepted the Ploetners'
argument, as opposed to some other grounds for remand.
 18 A-1671-14T4
find no support from In re Continental Airlines, 203 F.3d 203 (3d

Cir. 2000), which they cite, as that case addresses the discharge

of non-debtors, not a release of rights of the debtors.

 In sum, the Forbearance Agreement and the Trustee Releases

were valid and enforceable. The Ploetners' affirmative claims

were repackaged claims of their business entities, which were

released in the Trustee Releases (as pertained to both BMW

entities) and in the Forbearance Agreement (as pertained to BMW

Financial). Furthermore, the Ploetners released claims personal

to them against BMW Financial in the Forbearance Agreement. As

they raised no other genuine defenses to the foreclosure, the

court correctly granted summary judgment and entered final

judgment of foreclosure.

 To the extent not addressed, the Ploetners' remaining

arguments lack sufficient merit to warrant discussion. R. 2:11-

3(e)(1)(E).

 Affirmed.

 19 A-1671-14T4